# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| L & L LOGISTICS AND WAREHOUSING INC. d/b/a L & L TRUCKING, <br><br> Plaintiff, <br><br> v. <br><br> EVANSTON INSURANCE COMPANY and MARKEL CORPORATION, <br><br> Defendants. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> Civil Action No. 3:20-cv-324 |

Plaintiff L & L Logistics and Warehousing Inc. ("Plaintiff" or "L & L Trucking') brings this Complaint alleging relief against Defendants Evanston Insurance Company ("Evanston") and Markel Corporation ("Markel") and avers as follows:

## NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendants.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in store businesses must shut down on March 16, 2020, Plaintiff's trucking company has suffered business loss.

3. Plaintiff's insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

## JURISDICTION

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendants. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6.     This Court has personal jurisdiction over Defendants, Evanston and Markel. Defendant Markel's principal place of business is in Virginia and because Defendant Evanston's primary claims and management operations are in Virginia. Defendants are subject to general personal jurisdiction of this Court.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendant Markel's principal place of business is in Virginia and because Defendant Evanston's primary claims and management operations are in Virginia. Further Defendants' policies were drafted in this District.

## PARTIES

8.     Plaintiff L & L Trucking's principal place of business is in Hawthorne, California 90251. Plaintiff owns and operates a trucking company in the State of California.

9.     Defendant Evanston is an insurance carrier that provides business interruption insurance to Plaintiff. Evanston's claims department is operated out of Glen Allen, Virginia and its executive office are in Glen Allen, Virginia.  Additionally, by the terms of the insurance contract with Plaintiff, Evanston expressly agrees that "in the event of the failure of [Evanston] to pay any amount claimed to be due hereunder, the Company, at the request of the [Plaintiff], will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction . . . ." Exhibit 1 at 19.

10. Defendant Markel underwrote the insurance provided to Plaintiff and is headquartered at 4521 Highwoods Parkway, Glen Allen, Virginia 23068.

11. At all relevant times, Defendants issued a policy to Plaintiffs to cover business interruption loss from April 17, 2019 until April 17, 2020. It has been renewed form April 17, 2019 until April 17, 2020. The policy number is 2DB5079. The renewal of policy is 2DA0174. This policy was intended to cover losses to business interruption. *See* Policy, attached hereto as Exhibit 1.

12. The policy is currently in full effect in providing, among other things, personal property, business income and extra expense, contamination, and additional coverage.

13. Plaintiff submitted a claim for a date of loss pursuant to its policy seeking coverage under this policy. Defendants rejected Plaintiff's claim for coverage for business loss and business interruption and other claims, contending, *inter alia,* that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff purportedly is not entitled to coverage for the losses and damages. Defendants also claimed the policy does not cover losses due to the Virus Exclusion Clause.

## FACTUAL BACKGROUND

**I. Insurance Coverage**

14. Plaintiff faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

15. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Property or other properties are specifically prohibited by order of civil authority as

the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Insured Property. This additional coverage is identified as coverage under "Civil Authority."

16. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means coverage for all covered losses, including but not limited to direct physical loss or direct physical damage, unless the loss is specifically excluded or limited in the Policy.

17. The Policy also covers for damages resulting from business interruption when there is property damage. The exclusion for viruses does not apply to this pandemic.

18. Based on information and belief, the Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage.

## II. The Coronavirus Pandemic

19. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the trucking company.

20. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

21. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

22.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

23.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

### III.    Civil Authority

24.     On March 4, 2020, the State of California declared a State of Emergency for the entire state of California as a result of COVID-19.

25.     On March 11, 2020, the State of California set restrictions on large gatherings.

26.     On March 16, 2020, the State of California prohibited all gatherings regardless of size. This order effectively shut down all non-essential businesses.

27.     On March 17, 2020, the State of California issued a stay at home order that all non-essential workers must stay at home as a result of COVID-19. This order has been extended indefinitely.

28.     Plaintiff's trucking company is unable to operate due to the stay-at-home orders for public safety issued by the State of California. Plaintiff's customers are not in operation to receive his business. Plaintiff has submitted a claim to its insurance carrier related to such losses.

29.     Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff.

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. **Business interruption insurance**, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid.* You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*See* https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

30. The President is articulating a few core points:

   a. Business interruption is a common type of insurance.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. This pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny coverage, they would be acting in bad faith.

31. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is

conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

## IV. Impact on Plaintiff

32. As a result of the Orders referenced herein, Plaintiff's trucking business is at limited capacity. Plaintiff has customers who no longer receive packages because they were shut down by the State of California.

33. Plaintiff's business loss occurred when the State of California issues its order on March 16, 2020 banning any gatherings at an establishment.

34. Prior to March 16, 2020, Plaintiff was operating at full capacity. Plaintiff's trucking company is not a closed environment, and because people—staff, customers, community members, and others—constantly cycle in and out of the properties, there is an ever-present risk that the Insured Properties are contaminated and would continue to be contaminated.

35. Businesses like the Plaintiff's trucking company are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to a facility with open-air ventilation.

36. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another and because the nature of the property and activity are exposed to high level of respiratory droplets and fomites being released into the air of the property.

37. The virus is physically impacting Plaintiff. Any effort by the Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

38. A declaratory judgment determining that the coverage provided under the Policy exists and is necessary so as to prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the trucking school due to the shutdown caused by the civil authorities' response. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSE OF ACTION

## DECLARATORY RELIEF

39. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

40. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

41. An actual controversy has arisen between Plaintiff and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendants disputes and denies that:

   a. The Orders constitute a prohibition of access to Plaintiff's customers;

   b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here;

   d. The Orders trigger coverage;

   e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in California due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

    f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

    g. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

42. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

43. Plaintiff further seeks a Declaratory Judgement to affirm that the Order triggers coverage.

44. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in the State of California due to physical loss or damage from the Coronavirus and that the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

    a. For a declaration that the Orders constitute limited access to Plaintiff's customers' Properties.

    b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

    c. For a declaration that the Orders trigger coverage under the Policy.

    d. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in California due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

    e. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

    f.   For such other relief as the Court may deem proper.

## **TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demand trial by jury.

Dated: May 6, 2020

Respectfully submitted,

*/s/ Justin M. Sheldon*
Jeffrey A. Breit (VSB No. 18876)
Kevin Biniazan (VSB No. 92109)
Justin M. Sheldon (VSB No. 82632)
Breit Cantor Grana Buckner, PLLC
7130 Glen Forest Drive, Ste. 400
Richmond, VA 23226
Telephone (757) 622-6200
Facsimile: (757) 299-8022
Jeffrey@breitcantor.com
kbiniazan@breitcantor.com
jsheldon@breitcantor.com

Arnold Levin, Esq.*
Laurence Berman, Esq.*
Frederick Longer, Esq.*
Daniel Levin, Esq.*
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.*
Kenneth J. Grunfeld, Esq.*
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq.*
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III *
Rachel N. Boyd*
Paul W. Evans*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

**pro hac vice* applications to be submitted

***Counsel for Plaintiffs***