**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| **L & L LOGISTICS AND WAREHOUSING INC. d/b/a L & L TRUCKING,** ) ) ) ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.: 3:20-cv-00324-REP** |
| **v.** ) ) | |
| **EVANSTON INSURANCE COMPANY et al.,** ) ) | |
| **Defendants.** ) ) | |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 5

LEGAL STANDARD.......................................................................................................... 8

THE EVANSTON POLICIES & PLAINTIFF'S ALLEGATIONS ............................................ 9

ARGUMENT ...................................................................................................................... 17

    I.     L&L's Claim As Articulated in the Complaint Fails to Invoke Business
          Income, Extra Expense, or Civil Authority Coverage Under the Policy .............. 17

        A.     The Business Income & Extra Expense Coverages.................................. 17

            1.     California law recognizes that direct physical loss or damage in the
                  insuring clause requires physical alteration of the property ........ 18

            2.     The Complaint does not allege direct physical loss or damage as
                  required by California law and the Policy ................................... 20

        B.     The Civil Authority Coverage ................................................................ 23

            1.     The Complaint does not allege a direct physical loss to any
                  property within one mile of the described premises (and there was
                  no such direct physical loss) as required to trigger Civil Authority
                  coverage under the Policy........................................................... 24

            2.     The Complaint does not and could not allege action by civil
                  authority that prohibited access to the described premises........... 24

    II.     L&L's Claimed Business Income Losses Are Excluded By The Virus
          Exclusion And The Organic Pathogens Exclusion ................................................ 26

CONCLUSION.................................................................................................................... 27

Certificate of Service ......................................................................................................... 28

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................. 8

*Buxbaum v. Aetna Life & Casualty Co.,*
    103 Cal. App. 4th 434 (2002) ........................................................................... 21

*Commonwealth Enters. v. Liberty Mutual Ins. Co.,*
    No. 95-55719, 1996 U.S. App. LEXIS 29664 (9th Cir. Nov. 13, 1996) .......................... 19

*Great Am. Ins. Co. v. Gross,*
    No. 3:05CV159, 2008 U.S. Dist. LEXIS 10079, *13 (Feb. 11, 2008) .............................. 8

*Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n.,*
    793 F. Suppl. 259 (D. Or. 1990) ...................................................................... 20

*Hartford Inc. Co. v. Miss. Valley Gas Co.,*
    181 F. App'x 465 (5th Cir. 2006) .................................................................... 20

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indem. Co.,*
    9 Cal. 4th 27, 37, 884 P.2d 1-048, 1053, 26 Cal. Rptr. 2d 100, 105 (1994) ...................... 9

*Mama Jo's, Inc. v. Sparta Ins. Co.,*
    No. 17-cv-23362-KMM, 2018 U.S. Dist. LEXIS 201852 (S.D. Fl. Jun. 11, 2018) ........ 22

*Mastellone v. Lightening Rod Mut. Ins. Co.,*
    884 N.E.2d 1130 (Ohio Ct. App. 2008) .......................................................... 22

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.,*
    187 Cal. App. 4th 766 (2010) ................................................................... 6, 18

*Port Auth. Of N.Y. & N.J. v. Affiliated FM Ins. Co.,*
    311 F.3d 226 (3d. Cir. 2002) ......................................................................... 20

*Ruiz Food Prods., Inc. v. Catlin Syndicate Ltd.*,
    588 F. App'x 704 (9th Cir. 2014) ...................................................................................... 8

*Syufy Enters. v. Home Insurance Co.*,
    No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 (N.D. Cal. Mar. 22, 1995)......... 9, 25, 26

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................................................ 8

*Universal Image Productions, Inc. v. Fed. Ins. Co.*,
    181 F. App'x 465 (5th Cir. 2006) .................................................................................... 21

# INTRODUCTION[1]

According to Plaintiff L&L Trucking ("L&L"), the nature of this action is that "[i]n light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in store businesses must shut down on March 16, 2020, Plaintiff's trucking company has suffered business loss." Compl. ¶ 2.  L&L's Complaint seeks a judgment declaring that these claimed business losses are covered under certain policies of insurance issued by Defendant Evanston Insurance Company ("Evanston")[2] – specifically under the Business Income, Extra Expense, and Civil Authority coverages of the Evanston policies. Compl. ¶¶ 3, 15.  L&L claims that "[t]he [policies] provide[] business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of [L&L's] Insured Properties."  Compl. ¶ 41(f).

L&L's Complaint and request for declaratory judgment fail to state a claim upon which relief can be granted for two reasons.  First, in order to potentially trigger coverage under the Business Income and Extra Expense coverages at issue in this action, the Evanston policies require L&L to prove that there has been direct physical loss or damage to L&L's premises described in the Evanston policies and that the direct physical loss or damage actually caused the suspension of L&L's operations.  Similarly, for Civil Authority coverage to potentially apply, the Evanston

---

[1] This case has been identified in a Notice of Related Actions filed in *In re: COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942, in which the Judicial Panel on Multidistrict Litigation has been asked to consider the transfer and consolidation of insurance coverage litigation related to claims for lost business income due to the coronavirus pandemic. Evanston opposes MDL designation, as do the insurance carriers currently involved in the MDL proceedings as well as those that are parties in other cases that have also been identified as Related Actions.  It is Evanston's position that this case can be more fairly and efficiently resolved in this Court, which is renowned for its expeditious resolution of such actions, as opposed to the MDL process.

[2] The Evanston policies were underwritten and issued by Evanston Insurance Company.  Markel Corporation is not an insurance company and it did not underwrite or issue the Evanston policies.

policies require L&L to prove that  an order of a civil authority as a result of direct physical loss to another property (within one mile of L&L's insured premises) prohibited access to L&L's premises.  Despite L&L's conclusory assertions to the contrary in the Complaint, the presence of coronavirus in a premises does not result in any "direct physical loss" to the premises.  Instead, as California courts (whose law applies in this case) and courts outside California have recognized, the phrase "direct physical loss" requires a "distinct, demonstrable, physical alteration of the property." *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal. App. 4th 766, 778 (2010).  The presence of coronavirus in the air or on surfaces of a building does not cause such a distinct, demonstrable, physical alteration of the property.  Further, L&L has not even alleged in the Complaint that coronavirus was ever found to be present in the air or on any surfaces at its premises.  Instead, the Complaint asserts that L&L was merely concerned about this possibility.  Nor has L&L alleged that coronavirus was found in the air or on surfaces at any other property within one mile of L&L's premises or that any civil authority barred access to L&L's premises as a result.  In fact, there is no allegation in the Complaint that access to L&L's premises was barred by any order (because none of the orders referenced in the Complaint ever barred access to L&L, a transportation company's, premises).  As L&L's Complaint makes clear, L&L claims only a general  economic slowdown in L&L's business resulting from the coronavirus and that some of L&L's customers could no longer receive packages because those customers were shut down by the coronavirus orders.  The Complaint does not allege the requisite direct physical loss to premises/property and, therefore, L&L's Complaint fails to state a claim for coverage under the Evanston policies.

The second and independent reason that L&L's Complaint fails to state a claim upon which relief can be granted is that the Business Income, Extra Expense, and Civil Authority coverages of

the Evanston policies are all subject to a Virus Exclusion and an Organic Pathogens Exclusion, both of which bar coverage for claims resulting from coronavirus.  The Virus Exclusion states that Evanston "will not pay for loss or damage caused by or resulting from any virus … or other microorganism that induces or is capable of inducing physical distress, illness or disease … .";  Likewise, the Organic Pathogens Exclusion states that "regardless of any other cause or event that contributes concurrently or in any sequence to the loss", Evanston "will not pay for loss or damage caused directly or indirectly by… Presence, growth, proliferation, spread or any activity of 'organic pathogens'", which is defined as "[a]ny organic irritant or contaminant including, but not limited to … virus or other microorganism of any type, and their by-products".  Where L&L's own Complaint identifies coronavirus as the cause of L&L's claimed business income loss (*see, e.g.*, Compl. ¶ 41(f), seeking a declaration that "[t]he [policies] provide[] business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of [L&L's] Insured Properties"), the Virus Exclusion and the Organic Pathogens Exclusion resoundingly bar coverage for such losses and L&L's Complaint fails to state a claim upon which relief can be granted.

The coronavirus has unquestionably resulted in financial devastation for many businesses throughout the country and may have contributed to a slowdown of L&L's business (along with millions of businesses across the nation).  Evanston is not callous to this situation.  However, the Evanston policies are contracts that provide coverage only pursuant to their terms.  And those terms are clear that L&L's business slowdown (from decreased customer demand) resulting from the world-wide coronavirus pandemic is simply not covered for the reasons set out above and discussed in more detail in this memorandum.

**LEGAL STANDARD**

The legal standard applicable to a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) is well known to this Court.  Rule 12(b)(6) provides for dismissal due to "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"A copy of a written instrument that is an exhibit to a pleading," like the Policy here, "is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  And when evaluating the complaint, the Court may "consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

"In California, the interpretation of an insurance contract is a question of law." *Ruiz Food Prods., Inc. v. Catlin Syndicate Ltd.*, 588 F. App'x 704, 705 (9th Cir. 2014) ("The mere risk of contamination did not trigger coverage. The policy covers only contamination that actually 'occurs.'") (citing *Oliver Mach. Co. v. U.S. Fid. & Guar. Co.*, 187 Cal. App. 3d 1510, 1518 (1986)).[3]  The language of an insurance contract is construed "'to give effect to the mutual

---

[3] Where subject-matter jurisdiction is premised on diversity of citizenship, the court applies the choice of law principles of the forum state in which it sits.  *See Great Am. Ins. Co. v. Gross*, No. 3:05CV159, 2008 U.S. Dist. LEXIS 10079, *13 (Feb. 11, 2008).  Virginia's choice of law rules provide that insurance contracts are governed by the law of the state "where an insurance contract is written and delivered."  *Id.* The declarations of the Evanston policies indicate that they were issued to L & L in California, and, therefore, California law governs

intention of the parties.'"  *La Jolla Beach & Tennis Club, Inc. v. Industrial Indem. Co.*, 9 Cal. 4th 27, 37 (1994) (quoting Cal. Civ. Code § 1636).  "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* (quotation omitted). Accordingly, the "clear and explicit" meaning of contract provisions, interpreted in their "ordinary and popular sense," controls judicial interpretation. *Syufy Enterprises v. Home Insurance Co.*, No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 (N. D. Cal. Mar. 22, 1995).  Courts must give effect to "clear and explicit" policy language.  *La Jolla*, 9 Cal. 4th at 37 (quotation omitted).

## **THE EVANSTON POLICIES & PLAINTIFF'S ALLEGATIONS**

The Evanston Policies

As alleged in the Complaint, Evanston issued policy number 2DB5079 with effective dates from April 17, 2019 to April 17, 2020 to L&L (as the named insured) (the "2019 Policy").  Compl. ¶ 11.  A true and accurate copy of the 2019 Policy is attached to the Complaint as Exhibit 1.  The Complaint further alleges that the Policy was renewed for a subsequent period as policy number 2DA0174 with a policy period from April 17, 2020 to April 17, 2021 (the "2020 Policy").   The coverage terms relevant to L&L's claims and this action are identical between the 2019 Policy and the 2020 Policy (the 2019 Policy and the 2020 Policy are referred to collectively as the "Policy").

The Policy contains a Commercial Property Coverage Part which includes the Building and Personal Property Coverage (Form CP 00 10 10 12) and the Business Income (And Extra Expense) Coverage (Form CP 00 30 10 12).  The Business Income (And Extra Expense Coverage) Form provides the three coverages referenced in L&L's Complaint – Business Income, Extra Expense, and Civil Authority.  The relevant provisions of these coverages are as follows

**A.      Coverage**

        **1.      Business Income**

                        ***

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss …

        **2.      Extra Expense**

a.      Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

b.      Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

(1)      Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

(2)      Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

\*\*\*

**5.**   **Additional Coverages**

**a.**   **Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2)   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

> Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:
>
> (1)  Four consecutive weeks after the date of that action; or
>
> (2)  When your Civil Authority Coverage for Business Income ends;
>
> whichever is later.

(Form CP 00 30 10 12, Doc. 1-1, p. 77-78 of 102).

The premises described in the Declarations as referenced in the Business Income, Extra Expense, and Civil Authority coverages is L&L's location described in the Commercial Property Coverage Part Declarations:

### COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

POLICY NUMBER: 2DB5079                              ☐ "X" If Supplemental Declarations Is Attached

**DESCRIPTION OF PREMISES**

| Prem. No. | Bldg. No. | Location Address | No. of Stories | Year Built | Occupancy | Construction |
|---|---|---|---|---|---|---|
| 1 | 1 | 4936 Zambrano St, Commerce, CA 90040 | 1 | 1984 | Warehouse | Joisted Masonry |

| Class Code: 1211    Class Description: Freight Terminals |

(Form MDCP 1000 02 13, Doc. 1-1, p. 59 of 102).

The Policy's Commercial Property Coverage Part includes a Causes of Loss – Special Form (CP 10 30 10 12) which provides:

> A.  Covered Causes Of Loss
>
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

(Form CP 10 30 10 12, Doc. 1-1, p. 89 of 102).

The Commercial Property Coverage Part also includes two relevant endorsements establishing coverage exclusions. The first is the EXCLUSION – POLLUTION, ORGANIC PATHOGENS AND ASBESTOS (MECP 1310 09 14) which provides as follows.

**EXCLUSION – POLLUTION, ORGANIC PATHOGENS AND ASBESTOS**

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSON PROPERTY COVERAGE FORM
BUILDERS RISK COVERAGE FORM
CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM**

\*\*\*

I.      The BUILDING AND PERSONAL PROPERTY COVERAGE FORM is amended as follows:

\*\*\*

B.      The Definitions section is amended as follows:

\*\*\*

2.      The following definition is added:

"Organic pathogen" means:

a.      Any organic irritant or contaminant including, but not limited to, "fungus", wet or dry rot, bacteria, virus or other microorganism of any type, and their by-products such as spores or mycotoxin; or

b.      Any disease-causing agent as classified by the Environmental Protection Agency.

\*\*\*

II.      The CAUSES OF LOSS – BASIC FORM, CAUSES OF LOSS – BROAD FORM and CAUSES OF LOSS – SPECIAL FORM are amended as follows:

A.      The Exclusions section is amended as follows:

1.      The following replaces the "Fungus", Wet Rot, Dry Rot And Bacteria exclusion:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Organic Pathogens

Presence, growth, proliferation, spread or any activity of "organic pathogens".

This exclusion applies regardless of whether there is any:

a.      Direct physical loss or damage to Covered Property;

b.      Loss of use, occupancy or functionality or decreased valuation of Covered Property or loss of Business Income;

c.      Action required including, but not limited to, testing, repair, replacement, removal, clean-up, abatement, disposal, relocation, or actions taken to address medical or legal concerns; or

d.      Suit or administrative proceeding, or action involving the insured.

(Form MECP 1310 09 14, Doc. 1-1, pp 99-100 of 102) (the "Organic Pathogens Exclusion").

The second is the EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA (CP 01 40 07 06) which provides as follows:

### EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART
### STANDARD PROPERTY POLICY

A.      The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B.      We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Form CP 01 40 07 06, Doc. 1-1, p. 88 of 102) (the "Virus Exclusion").

Plaintiff's Allegations

L&L's Complaint alleges that "[i]n light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in store businesses must shut down on March 16, 2020, Plaintiff's trucking company has suffered business loss." Compl. ¶ 2. L&L's Complaint seeks a judgment declaring that these claimed business losses are covered under the Policy – specifically under the Business Income, Extra Expense, and Civil Authority coverages of the Policy set out above. Compl. ¶¶ 3, 15. In support of this claim, the Complaint alleges that:

- "Plaintiff [L&L] owns and operates a trucking company …" Compl. ¶ 8.

- "The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the trucking company." Compl. ¶ 19.

- "On March 4, 2020, the State of California declared a State of Emergency for the entire state of California as a result of COVID-19." Compl. ¶ 24. On March 16, 2020, the State of California prohibited all gatherings regardless of size. This order effectively shut down all non-essential businesses. Compl. ¶ 26

- "On March 17, 2020, the State of California issued a stay at home order that all non-essential workers must stay at home as a result of COVID-19. This order has been extended indefinitely." Compl. ¶ 27.

- "As a result of the Orders referenced herein, Plaintiff's trucking business is at limited capacity. Plaintiff has customers who no longer receive packages because they were shut down by the State of California." Compl. ¶ 32.

- "Prior to March 16, 2020, Plaintiff was operating at full capacity.  Plaintiff's trucking company is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the properties, there is an ever-present risk that the Insured Properties are contaminated and would continue to be contaminated."  Compl. ¶ 34.

- "Businesses like the Plaintiff's trucking company are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer compared to a facility with open-air ventilation."  Compl. ¶ 35.

- "Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another and because the nature of the property and activity are exposed to high level of respiratory droplets and fomites beings released into the air of the property."  Compl. ¶ 36.

- "The virus is physically impacting Plaintiff.  Any effort by the Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public."  Compl. ¶ 37.

- "An actual controversy has arisen between Plaintiff and Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendants disputes and denies that: . . . f.  The Policy provides business income coverage in the event that Coronavirus has directly or indirectly

caused a loss or damage at the insured premises or immediate area of the Insured Properties[.]"  Compl. ¶ 41.

- "Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in the State of California due to physical loss or damage from the Coronavirus and that the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property."  Compl. ¶ 44.

## ARGUMENT

### I.  L&L's Claim as Articulated in the Complaint Fails to Invoke Business Income, Extra Expense, or Civil Authority Coverage under the Policy.

L&L's Complaint fails to state a claim upon which relief can be granted because the Complaint fails to allege threshold facts that bring L&L's lost business income claim within the insuring agreement of the Policy's Business Income, Extra Expense, or  Civil Authority coverages at issue in this action.  This is because such facts simply do not exist.

### A.  The Business Income & Extra Expense Coverages

The Business Income coverage provisions provide in relevant part as follows:

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations.  The loss or damage must be caused by or result from a Covered Cause of Loss.

The Extra Expense coverage provisions provide in relevant part as follows:

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

(1)     Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

(2)     Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

As these provisions make clear, the Business Income and Extra Expense coverages are triggered only if there has been direct physical loss or damage at L&L's premises described in the Policy Declarations.  The existence of physical loss or damage to L&L's premises is a prerequisite to these coverages and dictates other aspects of these coverages (including the duration).[4]

### 1.     California law recognizes that direct physical loss or damage in the insuring clause requires physical alteration of the property.

California courts have long recognized and enforced the requirement of direct physical loss or damage in business income and extra expense claims.  As explained by one California appellate court, "In modern policies, 'physical loss or damage' is typically the trigger for coverage." *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal. App. 4th 766, 778 (2010) (holding that insured was not entitled to recover lost business income where MRI machine would not function properly after being temporarily shut down because there was no "distinct, demonstrable [or] physical alteration" of the MRI machine).  "That the loss needs to be 'physical,'

---

[4] For example, without the requirement of physical loss or damage, it would be impossible to determine the "period of restoration" during which the insured is entitled to recover its lost business income and extra expenses.  "Period of restoration" is defined to begin "72 hours after the time of direct physical loss or damage for Business Income Coverage . . . caused by or resulting from any Covered Cause of Loss at the described premises" and "[e]nds on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."  (Form CP 00 30 10 12, Doc. 1-1, p. 85 of 102).  Where there is no actual physical loss or damage to the premises, neither the insured nor the insurer can determine the start or end date under this definition and these provisions are rendered meaningless.

given the ordinary meaning of the term, is 'widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'" *Id.* at 779 (quoting 10A *Couch on Insurance* § 148:1, at 148-81 (3d ed. 2010)).

The California court in *MRI* further explained the reinforcing significance of the "word 'direct' used in conjunction with the word 'physical.'" *Id.* "A direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Id.* (quotation omitted). Moreover, "[i]n this sense, 'direct' means '[w]ithout intervening persons, conditions, or agencies; immediate.'" *Id.* (citation omitted). Thus, the court concluded, "[f]or loss to be covered, *there must be a 'distinct, demonstrable, physical alteration' of the property*." *Id.* (quoting 10A Couch on Insurance, *supra*, § 148:46, at 148-81) (emphasis added).

Under California law, the effect on the property must be tangibly transformative. "For there to be 'loss' within the meaning of the policy, some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property, i.e., it must have been 'damaged within the common understanding of that term.'" *Id.* (quoting *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556-557 (2003) (loss of stored database when system "crashed" with consequent economic loss was not "'direct physical loss'" covered under policy)).

Applying these same principles to facts analogous to those alleged in this case, the Ninth Circuit held in *Commonwealth Enterprises v. Liberty Mutual Insurance Co.*, No. 95-55719, 1996

U.S. App. LEXIS 29664 (9th Cir. Nov. 13, 1996) that an office building was not entitled to recover lost business income where tenants vacated because of concerns about the possibility of airborne asbestos contamination in the building.  There, a fire occurred at the building, but physical damage was limited to only four floors.  *Id.* at *6-7.  Nonetheless, tenants on unaffected floors vacated because of their perception that airborne asbestos contamination existed in the building following the fire.  *Id.*  Rejecting the insured's claim for lost income related to these tenants' departures, the court began by explaining that "[u]nder the Policy, direct physical loss or damage to property at the insured premises is a condition precedent to coverage for lost business income." *Id.* at *6.  "On its face," the court stated, "the language encompasses a requirement of some physical damage to the floor to recover lost profits for that floor."  *Id.*  Thus, the court held that where there was no evidence of any physical damage to any floors other than the four affected and the tenants vacated based on their concerns about asbestos contamination, the insured was not entitled to recover those lost profits.  *Id.* at *6-7.[5]

2.    **The Complaint does not allege direct physical loss or damage as required by California law and the Policy.**

Applying the plain language of the Business Income Coverage and Extra Expense Coverage and these well-reasoned holdings interpreting the same, the Complaint clearly fails to

---

[5] California law is consistent with the national majority.  *See, e.g., Hartford Ins. Co. v. Miss. Valley Gas Co.,* 181 F. App'x 465 (5th Cir. 2006) ("The requirement that the loss be "physical" given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."); *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d. Cir. 2002) ("In ordinary parlance and widely accepted definition, physical damage to property means a distinct, demonstrable, and physical alteration of its structure."); *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 793 F. Supp. 259 (D. Or. 1990) (opining that asbestos contamination was not a physical loss, as the building remained unchanged), *aff'd*, 953 F.2d 1387 (9th Cir. 1992).

state a claim upon which relief can be granted because the Complaint does not allege (because L&L did not sustain) any direct physical loss or damage to L&L's premises to invoke the Policy's Business Income or Extra Expense coverages.[6]   L&L alleges only that its business is "susceptible to being or becoming contaminated" with coronavirus.  Compl. ¶ 35.  It has not alleged and cannot allege any physical alteration of any portion of the insured premises.

Nor would any amendment to the Complaint cure this deficiency.  Even if the Complaint were to allege that L&L's premises was found to have coronavirus on surfaces or in the air, the presence of this coronavirus (or any other virus) in the air or on surfaces in a building does not constitute direct physical loss or damage under controlling California law.  As set forth above, the requirement of a direct physical loss or damage excludes losses that are "intangible or incorporeal" or where "the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."  *MRI*, 187 Cal. App. 4th at 778.  The mere presence of coronavirus at the insured's premises would not cause physical loss or damage to the insured's premises, nor would it even require the insured's business to shut down.[7]  At most, it would require L&L to take extra precautions in cleaning and sanitizing its property, which courts have recognized does not constitute a physical loss or damage.  *See Universal Image Productions, Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569, 574 (6th Cir. 2012) (holding that policyholder was not entitled to recover lost business income where it temporarily vacated its premises to clean and remediate microbial contamination because it "did not suffer any tangible damage to physical

---

[6] Importantly, under California law, L&L bears the burden to prove that the damage alleged is within the scope of the insurance coverage provided by the Policy.  *See Buxbaum v. Aetna Life & Casualty Co.*, 103 Cal. App. 4th 434, 441 (2002).

[7] Indeed, businesses throughout the country, such as hospitals, nursing homes, meat processing plants, and others, continue to perform operations at premises where there has been confirmed presence of coronavirus.

property" as a result of the mold and bacterial contamination); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 U.S. Dist. LEXIS 201852 (S.D. Fl. Jun. 11, 2018) (holding that where dust that infiltrated the insured's restaurant could be wiped down and cleaned, there was no "direct physical loss"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Ohio Ct. App. 2008) (finding that mold which could be removed by cleaning was not physical damage, as it did not alter or otherwise affect the structural integrity of the building's siding).

Likewise, even if the California stay-at-home order referenced in the Complaint barred access to L&L's covered premises (it did not), a governmental order prohibiting access to stifle the spread of a virus does not create or otherwise constitute "direct physical loss or damage" to L&L's premises (i.e., such an order restricting access does not cause a "distinct, demonstrable, physical alteration" to the premises). And, in fact, the California stay-at-home order did not bar access to L&L's premises or require that L&L shut down, and the Complaint does not allege otherwise. Indeed, L&L's trucking business was not subject to the relevant stay-at-home order as part of the transportation systems sector, one of the federal critical infrastructure sectors excepted from the scope of the order.[8] Consistent with this, the Complaint specifically alleges that L&L has continued its operations. *See* Compl. ¶ 32 (alleging that L&L is operating at a "limited capacity").

---

[8] Executive Order N-33-20 ordered all individuals living in the State of California "to stay at home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined as https://cisa.gov/identifying-critical-infrastructure-during-covid-19. . . . I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being." CA Exec. Order N-33-20 (Mar. 19, 2020), available at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf. Among the 16 critical infrastructure sectors referenced in the order is transportation systems sector, which includes L&L's trucking business. Cybersecurity and Infrastructure Security Agency, *Transportation Systems Sector* (May 9, 2019), available at https://www.cisa.gov/transportation-systems-sector.

Ultimately, the loss claimed by L&L in the Complaint is a purely economic loss caused by a reduction in demand for its trucking services during the coronavirus pandemic – not any direct physical loss or damage to the premises where L&L conducts its business.  Because the threshold direct physical loss or damage is absent from L&L's Complaint (and claims), L&L cannot state a claim for coverage under either the Business Income or Extra Expense coverage of the Policy.

**B.     The Civil Authority Coverage**

As discussed above, in addition to the Policy's Business Income and Extra Expense coverages, the Policy also provides Civil Authority Coverage.  The relevant provisions of that coverage provide as follows:

> 5.     Additional Coverages
>
> a.     Civil Authority
>
> In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.
>
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1)     Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2)     The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Form CP 00 30 10 12, Doc. 1-1, p. 78 of 102).

Based on this language, in order to recover under the Civil Authority Coverage, L&L must plead and prove facts demonstrating that a Covered Cause of Loss (defined as "direct physical

loss") caused damage at a property within one mile of L&L's premises and that a civil authority prohibited access to L&L's premises in response to dangerous conditions at the damaged property or to enable the civil authority to have unimpeded access to the damaged property.  L&L has not pled such facts, nor could it prove any such facts if alleged.

      **1.**      **The Complaint does not allege a direct physical loss to any property within one mile of the described premises (and there was no such direct physical loss) as required to trigger Civil Authority coverage under the Policy.**

Just as L&L has not pled facts supporting the existence of a direct physical loss at its own premises, L&L's Complaint fails to plead any facts supporting the existence of a direct physical loss at any property within one mile of L&L's premises. And for the reasons discussed above with respect to Business Income and Extra Expense coverages, even if L&L alleged that coronavirus was present at a nearby property or that California's stay-at-home orders caused a neighboring business to shut down, neither of these circumstances would present a "distinct, demonstrable, physical alteration" to that other property to satisfy the Civil Authority Coverage's direct physical loss requirement.  Thus, L&L cannot satisfy the most basic element of the Civil Authority Coverage.

      **2.**      **The Complaint does not and could not allege action by civil authority that prohibited access to the described premises.**

Additionally, L&L has not pled and cannot plead that a civil authority prohibited access to L&L's premises in response to a dangerous physical condition resulting from damage at a nearby property (within one mile of L&L) – which is another prerequisite to the Policy's Civil Authority Coverage.  Indeed, the Complaint alleges that L&L does, in fact, have access to its premises and is performing operations thereon.  *See* Compl. ¶ 32 (stating that Plaintiff's trucking business is operating at limited capacity) and ¶ 34 (stating that people constantly cycle in and out of the

properties).[9]  Nor does the content of any of the California orders referenced in the Complaint in any way constitute a prohibition of access to L&L's premises.  Thus, L&L cannot satisfy this required element of the Policy's Civil Authority Coverage.

Even if L&L were to argue that the California stay-at-home order required people to stay home, effectively prohibiting access to L&L's premises, this assertion would not satisfy the requirement of the Civil Authority Coverage that an "action of civil authority … prohibits access to [L&L's] premises." As previously recognized by one California court, an order telling people to stay home generally is not the equivalent of an order prohibiting access to L&L's premises.  The court in *Syufy Enterprises v. Home Insurance Co.*, No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 (N. D. Cal. Mar. 22, 1995) dealt with a similar claim and held that no civil authority coverage was available because the action of the civil authority did not specifically prohibit access to the insured's premises.   There, the insured, who owned and operated fifty-six movie theaters throughout the West Coast, sought coverage for lost income as a result of dawn-to-dusk curfews imposed by civil authorities in San Francisco, Los Angeles, and Las Vegas following the verdict in the Rodney King case.  *Id.* at *3.  The insured alleged that it was forced to close its theaters during the curfew period and lost income as a result.  *Id.*  The court rejected the insured's claim for civil authority coverage, holding that no civil authority ever prohibited any individuals from

---

[9] While L&L has alleged that "[t]he Orders constitute a prohibition of access to Plaintiff's customers", this is not an element under the Civil Authority Coverage.  As stated in the plain language of the Policy, the civil authority must prohibit access to the insured's own premises.  *See also Syufy Enterprises v. Home Insurance Co.*, No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771, *6 n1 (N. D. Cal. Mar. 22, 1995) ("Based on the plain and unambiguous language of the provision, the following situation would clearly be covered: A building next door to a Syufy theater is damaged by fire; for safety reasons, the civil authorities issue an order closing *the Syufy theater* during repairs to the adjacent building.") (emphasis added).

entering the insured's theaters; "rather, the cities imposed dawn-to-dusk curfews to reduce the possibility of rioting and looting." *Id*. at *5.

Likewise, here, the California stay-at-home order was not entered to prohibit access to L&L's premises or to prohibit people from entering L&L's premises, but instead, the order was entered to reduce the transmission of coronavirus.  As such, L&L's coverage claim asserted in the Complaint fails to meet at least two of the required elements of the Policy's Civil Authority Coverage (direct physical loss to a property within one mile of L&L and the action of a civil authority that prohibited access to L&L's premises as a result) and, thus, fails to state a claim upon which relief can be granted.

## II.   L&L's Claimed Business Income Losses Are Excluded By The Virus Exclusion And The Organic Pathogens Exclusion.

The second and independent reason that L&L's Complaint fails to state a claim upon which relief can be granted is that L&L's claims under the Policy's Business Income, Extra Expense, and Civil Authority coverages as articulated in the Complaint are excluded by the Policy's Virus Exclusion ("[w]e will not pay for loss or damage caused by or resulting from any virus …") and Organic Pathogens Exclusion (defining "organic pathogens" to include "virus or other microorganism of any type" and stating that "[w]e will not pay for loss or damage caused directly or indirectly by … the … [p]resence, growth, proliferation, spread or any activity of "organic pathogens" … [s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.").  Both exclusions clearly and explicitly preclude coverage where loss is caused by virus, which is the crux of L&L's entire Complaint – seeking business income that L&L lost because of coronavirus and the resulting slowdown of L&L's business. *See Syufy Enterprises v. Home Insurance Co.*, No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 (N. D. Cal. Mar. 22, 1995) (recognizing that California law requires courts to

apply the "clear and explicit" meaning of contract provisions, and to interpret them in their "ordinary and popular sense"). As such, L&L's Complaint and request for declaratory judgment fail to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons discussed above, L&L has failed to state a claim upon which relief can be granted. First, the Complaint does not and cannot allege that L&L's insured premises have sustained any direct physical loss or damage, which is required for coverage under the Business Income and Extra Expense coverages. Likewise, the Complaint does not and cannot allege that there has been direct physical loss to any property within one mile of the insured's premises nor that any civil authority prohibited access to L&L's premises as a result, which are required elements of the Policy's Civil Authority Coverage. Second, it is clear from the allegations of the Complaint that the Virus Exclusion and the Organic Pathogens Exclusion bar coverage under the Policy's Business Income, Extra Expense, and Civil Authority coverages. Accordingly, the Court should dismiss L&L's Complaint with prejudice.

**Respectfully submitted,**

**EVANSTON INSURANCE COMPANY**
**MARKEL CORPORATION**

**BY:** /s/ John B. Mumford, Jr.
**Counsel**

John B. Mumford, Jr. (VSB No.: 38764)
Lindsay L. Rollins (VSB.: 86362)
Hancock, Daniel, & Johnson P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
lrollins@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Evanston Insurance Company*
*and Markel Corporation*

27

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 4th day of June 2020, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following:

Jeffrey A. Breit (VSB No. 18876)
Kevin Biniazan (VSB No. 92109)
Justin M. Sheldon (VSB No. 82632)
**BREIT CANTOR GRANA BUCKNER, PLLC**
7130 Glen Forest Drive, Ste. 400
Richmond, VA 23226
Jeffrey@breitcantor.com
kbiniazan@breitcantor.com
jsheldon@breitcantor.com
Telephone (757) 622-6200
Facsimile: (757) 299-8022

Daniel Levin, Esq. *(pro hac vice)*
Arnold Levin, Esq.*
Laurence Berman, Esq.*
Frederick Longer, Esq.*
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
dlevin@lfsblaw.com
alevin@lfsblaw.com
flonger@lfsblaw.com
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Richard M. Golomb, Esq.*
Kenneth J. Grunfeld, Esq.*
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com
Telephone: (215) 985-9177
Facsimile: (215) 985-4169

Aaron Rihn, Esq.*
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III *
Rachel N. Boyd*
Paul W. Evans*
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*pro hac vice* pending
*Counsel for L & L Logistics and
Warehousing, Inc.*

/s/ John B. Mumford, Jr.
John B. Mumford, Jr. (VSB No.: 38764)
Lindsay L. Rollins (VSB.: 86362)
Hancock, Daniel, & Johnson P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
lrollins@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile:  (804) 967-9888
*Counsel for Evanston Insurance Company
and Markel Corporation*