IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

L&L LOGISTICS AND WAREHOUSING INC. DBA L&L TRUCKING,

    Plaintiff,

v.                             Civil Action No. 3:20-cv-324

EVANSTON INSURANCE CO.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS' RENEWED MOTION TO DISMISS AMENDED COMPLAINT ("Renewed Motion to Dismiss") (ECF No. 48).  Defendant Evanston Insurance Company[1] ("Evanston") requests that Plaintiff L&L Logistics and Warehousing Inc. d/b/a L&L Trucking's ("L&L's") FIRST AMENDED COMPLAINT (ECF No. 13) be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the Renewed Motion to Dismiss will be granted.

## I. BACKGROUND

### A. Statement of Facts

At all relevant times, L&L, a California corporation, had an insurance policy (the "Policy") with Evanston Insurance, an insurance carrier headquartered in Glen Allen, Virginia.  FAC ¶¶

---

[1] Markel Corporation ("Markel") was originally named as a defendant, but by agreement of the parties, the Court dismissed Markel as a party to the suit.  ORDER, ECF No. 56.

3, 9, ECF No. 13.   The Policy was based on "language that is essentially standardized language adopted from and/or developed by the ISO,"[2] and it covered certain business losses.   FAC ¶¶ 11, 21, ECF No. 13.

Between March 4, 2020 – March 17, 2020, in response to the COVID-19 pandemic, the state of California enacted a series of restrictions on public gatherings, concluding with a stay-at-home order limiting the ability of non-essential businesses to function normally.   FAC ¶¶ 42-45, ECF No. 13.

Like many businesses around the world, "[i]n light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in store businesses must shut down on March 16, 2020, Plaintiff's trucking company has suffered business loss."   FAC ¶ 2, ECF No. 13.   L&L takes the position that its damages were caused both by the contamination of COVID-19 on the covered premises and the California COVID-19 orders. See FAC ¶¶ 54-60, ECF No. 13; see also March 24 Hearing Tr.

---

[2] "The Insurance Services Office, or ISO, 'is a nonprofit trade association that provides rating, statistical, and actuarial policy forms and related drafting services to approximately 3,000 nationwide property or casualty insurers. Policy forms developed by ISO are approved by its constituent insurance carriers and then submitted to state agencies for review. Most carriers use the basic ISO forms, at least as the starting point for their general liability policies.'"   McMillin Homes Construction, Inc. v. National Fire & Marine Ins. Co., 247 Cal. Rptr. 3d 825, 840 n.2 (Cal. Ct. App. 2019) (quoting Montrose Chemical Corp. v. Admiral Ins. Co., 42 Cal. Rptr. 2d 324, 355 n.13 (Cal. 1995)).

2

23:8-12, ECF No. 58. L&L submitted a claim for business loss and business interruption insurance in an amount greater than $150,000, but Evanston denied the claim. FAC ¶¶ 4, 13, ECF No. 13.

L&L is now seeking a declaratory judgment that would essentially find that L&L is entitled to Business Income, Extra Expense, and Civil Authority coverage under the Policy. See FAC at 13, ECF No. 13. Evanston, in turn, filed a counterclaim which essentially seeks declaratory judgment of the exact opposite. Countercl. at 11, ECF No. 11. Evanston now seeks to have L&L's First Amended Complaint dismissed for the same reasons outlined in the Counterclaim (i.e., L&L's claim is not covered under the Policy).[3]

## B. Contractual Provisions

The current dispute centers around the interaction between the first two pages of the "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM" (CP 00 30 10 12), the single-paged "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA" (CP 01 40 07 06), the two-paged "EXCLUSION - POLLUTION, ORGANIC PATHOGENS AND ASBESTOS" (MECP 1310 09 14), and the ten-paged "CAUSES OF LOSS - SPECIAL FORM"

---

[3] During the hearing on Evanston's Motion to Dismiss, Evanston agreed that by deciding its Renewed Motion to Dismiss (ECF No. 48), the Court would also be disposing of the Counterclaim 9ECF No. 11). March 24 Hearing Tr. 13:24-14:2, ECF No. 58.

3

(CP 10 30 10 12).  The full text of the relevant provisions is provided in the Appendix.

### Business Income Coverage

The "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM" states that Evanston

> [W]ill pay for the actual loss of Business Income you [i.e., the policyholder] sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'.  The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations . . . .  The loss or damage must be caused by or result from a Covered Cause of Loss.

EX. 1 ("Policy") at 77, ECF No. 13-1.  But importantly, the loss or damage must be caused by a "Covered Cause of Loss" which is defined in the "CAUSES OF LOSS - SPECIAL FORM."

### Extra Expense Income Coverage

The "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM" also states that Extra Expense Income coverage applies to "necessary expenses you [i.e., the policyholder] incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."  EX. 1 ("Policy") at 77, ECF No. 13-1 (emphasis added).

### Civil Authority Coverage

And, finally, the "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM" states that Civil Authority coverage applies when

4

(1) "a Covered Cause of Loss causes damage to property other than the property at the described premises"; (2) "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage"; (3) "the described premises are within that area but are not more than one mile from the damaged property"; and (4) "[t]he action of the civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."   EX. 1 ("Policy") at 78, ECF No. 13-1 (emphasis added).

*Covered Causes of Loss*

All relevant portions of the "BUSINESS EXPENSE (AND EXTRA EXPENSE) COVERAGE FORM," — i.e., the Business Income coverage, Extra Expense Income coverage, and Civil Authority coverage provisions — state that coverage can only be triggered by a "Covered Cause of Loss." See EX. 1 ("Policy") at 77-78, ECF No. 13-1.   The "CAUSES OF LOSS - SPECIAL FORM," states that "[w]hen Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy."   EX. 1 ("Policy") at 89, ECF No. 13-1 (emphasis); see also EX. 1 ("Policy") at 59, ECF No. 13-1 (showing table on "Commercial Property Coverage Part

5

Case 3:20-cv-00324-REP Document 60 Filed 04/13/21 Page 6 of 26 PageID# 1593

Declarations" form [MDCP 1000 02 13] with "Special" listed under the "Covered Causes of Loss" column for the "Business Income with Extra Expense" row).

***Virus Exclusions***

For the purposes of this case, there are two relevant loss exclusions: the Virus Exclusion and the Organic Pathogen Exclusion. Both exclusions apply to the "BUSINESS EXPENSE (AND EXTRA EXPENSE) COVERAGE FORM" which outlines the Business Income Loss, Extra Expense, and Civil Authority coverage provided by the Policy. See EX. 1 ("Policy") at 88-89, 99, ECF No. 13-1. However, the scope and applicability of each exclusion varies.

Under the Virus Exclusion, Evanston "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." EX. 1 ("Policy") at 88, ECF No. 13-1. The Virus Exclusion explicitly states that it applies to "all coverage" under the policy. EX. 1 ("Policy") at 88, ECF No. 13-1.

Under the Organic Pathogen Exclusion, Evanston "will not pay for loss or damage caused directly or indirectly by[,]" among other things, the "[p]resence, growth, proliferation, spread or any activity of 'organic pathogens[,]'" including viruses. EX. 1 ("Policy") at 99, ECF No. 13-1 (emphasis added). Moreover, "[s]uch loss or damage is excluded <u>regardless of any</u>

6

other cause or event that contributes concurrently or in any sequence to the loss." EX. 1 ("Policy") at 99, ECF No. 13-1 (emphasis added). The Organic Pathogen Exclusion amends the "CAUSES OF LOSS - SPECIAL FORM" — which is the loss form that applies to the relevant provisions of the Policy — by excluding losses caused by organic pathogens, including viruses. EX. 1 ("Policy") at 9, 11-12, 77-78, 89, ECF No. 13-1. Thus, the Organic Pathogen Exclusion operates to remove "organic pathogens" from the definition of a "covered cause of loss."

## II. DISCUSSION

### A. Legal Standard

#### 1. 12(b)(6) Motions

A motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) "tests the sufficiency of a complaint." Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). To survive a motion to dismiss, the factual allegations set forth in the complaint must be sufficient to "'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim is 'plausible on its face,' if a plaintiff can demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Nevertheless,

7

"[a] complaint should not be dismissed pursuant to Rule 12(b)(6) . . . unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." Chapman v. Clarendon Nat'l Ins., 299 F. Supp. 2d 559, 562 (E.D. Va. 2004).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). However, courts need not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting United States v. Triple Canopy, Inc., 775 F.3d 628, 632 n.1 (4th Cir. 2015)) (internal quotation marks omitted). And, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Although a court's review is generally limited to the allegations in the complaint, where a copy of a written instrument is attached as an exhibit to the complaint or incorporated by reference, the instrument is part of the complaint and a court may consider it. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); see also Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by

reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## 2. California Contract Law

Both parties agree that the Policy is governed by California law.  March 24 Hearing Tr. 7:12-8:10, ECF No. 58. And, under California law, the interpretation of an insurance policy is question of law.  Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 326 P.3d 253, 259 (Cal. 2014).

Under California's rules of contract interpretation, a court should interpret an insurance policy using "settled rules of contract interpretation," the most "fundamental" of which is that "a contract must give effect to the 'mutual intention' of the parties" as it existed at the time the parties entered into the contract.  Ameron Internat. Corp. v. Ins. Co. of State of Pennsylvania, 242 P.3d 1020, 1024 (Cal. 2010), as modified (Jan. 19, 2011) (quoting Cal. Civ. Code § 1636) (cleaned up).  A court should determine the intent of the parties by first considering the text of the policy.  Hartford, 326 P.3d at 259.  In so doing, a court should look for the plain meaning of the language used in the policy unless the parties used terms in a technical sense or gave them a special meaning.  See id.  But, a court should also interpret the language within the context of the

insurance policy as a whole, including how the language was intended to function in the policy.  See id.

A provision of an insurance policy is ambiguous if it is "susceptible of two or more reasonable constructions." Ameron, 242 P.3d at 1024.  But the ambiguity must be based on the circumstances of the case; a term should not be "found to be ambiguous in the abstract." Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 627 (Cal. 1995), as modified on denial of reh'g (Oct. 26, 1995).  "[I]f, after the court evaluates the policy's language and context, ambiguities still exist, the court must construe the ambiguous language against the insurer, who wrote the policy and is held 'responsible' for the uncertainty." Ameron, 242 P.3d at 1024 (citation omitted).

Similarly, exclusionary clauses are generally "interpreted narrowly against the insurer" because the insurer bears the burden to phrase any exclusions in clear language. MacKinnon v. Truck Ins. Exch., 73 P.3d 1205, 1213 (Cal. 2003), as modified on denial of reh'g (Sept. 17, 2003).  "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." Id.

## B. <u>Virus and Organic Pathogen Exclusions</u>

### 1. **Plain Language of the Contract**

Evanston argues that the clear and explicit language of the Policy's Virus and Organic Pathogen Exclusions prohibits L&L's claim. DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT ("DEFENDANTS' MOTION TO DISMISS MEMORANDUM") at 26, ECF No. 49. The Court shares Evanston's view of the plain meaning of the two exclusions. First, the Virus Exclusion prohibits any claim caused by a virus — full stop. Second, even if the Virus Exclusion somehow did not apply, the Business Income, Extra Expense, and Civil Authority coverage provisions all only apply to "Covered Causes of Losses," and the Organic Pathogen Exclusion quite clearly excludes viruses from the realm of "covered causes," even where the loss or damage was only indirectly caused by a virus. Insofar as L&L's First Amended Complaint clearly alleges that the damage it experienced was caused either directly or indirectly caused by a virus,[4] L&L's claim is barred on the face

---

[4] <u>See, e.g.</u>, FAC ¶ 46, ECF No. 13 ("These [COVID-19] Orders have the effect of prohibiting access to Plaintiff's Insured Properties <u>due to</u> contamination and physical damage caused by the Coronavirus to surrounding property.") (emphasis added); FAC ¶ 52, ECF No. 13 ("The Civil Authority Orders were entered <u>because of</u> the contamination and damage of property caused by the Coronavirus within one mile of Plaintiff's Insured Properties.") (emphasis added).

of the two virus exclusions — regardless of the meaning of "direct physical loss."

That view of the virus exclusion language has been endorsed by numerous California courts, though all in unpublished opinions. DEFS.' MOT. TO DISMISS MEM. at 26, ECF No. 49; see, e.g., Franklin EWC, Inc. v. The Hartford Financial Services Group, Inc., No. 3:20-cv-04434-JSC, 2020 U.S. Dist. LEXIS 234651 (N.D. Cal. Dec. 14, 2020), *2-6 (finding virus exclusion applies to COVID-19 in comparable case with exclusion language functionally identical to the Organic Pathogen Exclusion in this case); Roundin3rd Sports Bar LLC v. Hartford, No. 2:20-cv-05159-SVW-PLA, 2021 U.S. Dist. LEXIS 33044, *4, *18-20 (C.D. Cal. Jan. 14, 2021) (same); BA LAX, LLC v. Hartford Fire Ins. Co., 2021 U.S. Dist. LEXIS 10919, *4, *9-11 (C.D. Cal. Jan. 12, 2021) (same); 10E, LLC v. Travelers Indem. Co., 2020 U.S. Dist. LEXIS 217482, *3, *5-9 (C.D. Cal. Nov. 13, 2020) (finding virus exclusion applies to COVID-19 in comparable case with exclusion language functionally identical to the Virus Exclusion in this case); Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos, 2020 U.S. Dist. LEXIS 196932, *5, *9-10 (C.D. Cal. Oct. 19, 2020) (same); Mark's Engine Co. No. 28 Rest. v. Travelers Indem. Co., 2020 U.S. Dist. LEXIS 188463, *6, *13-14 (C.D. Cal. Oct. 2, 2020) (same). It is good that a number of California-based federal courts have come to the same conclusion in comparable

cases, but the Court need not rely on them to reach a decision in this case.  The plain meaning of the contract is clear and unambiguous.  See Hartford, 326 P.3d at 259.

### 2. L&L's Arguments

To attempt to get around the clear language of the contract, L&L makes a number of arguments: (a) the Virus and Organic Pathogen Exclusions do not apply to the Civil Authority coverage; (b) denying coverage based on either the Virus or Organic Pathogen Exclusion would be contrary to the reasonable expectations of the parties; (c) the virus exclusion is ambiguous; and (d) Defendant's Renewed Motion to Dismiss is not ripe.  See Resp. Mem at 18-24, ECF No. 50.  None of these hold water.

### a. Civil Authority Coverage

First, L&L says that the business income loss and extra expense that L&L incurred were caused by California's COVID-19 orders and not the COVID-19 virus itself.  See PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION IN SUPPORT OF RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT ("RESPONSE MEMORANDUM") at 18, ECF No. 50.  There are several problems with that argument.  To begin, as noted earlier, L&L's own amended complaint states multiple times that the coronavirus shut-down orders were necessary because of the coronavirus.  And, despite L&L's assertion to the contrary, RESP. MEM. at 18, ECF No. 50,

13

the Virus and Organic Pathogen Exclusions apply regardless of whether COVID-19 was the direct or indirect cause of L&L's losses.     The language of the Organic Pathogen Exclusion quite clearly states that Evanston "will not pay for loss or damage caused directly or indirectly by[,]" among other things, a virus.    EX. 1 ("Policy") at 99, ECF No. 13-1 (emphasis added). And, "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."    EX. 1 ("Policy") at 99, ECF No. 13-1.    At the same time, the Virus Exclusion applies to any "loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease."    EX. 1 ("Policy") at 88, ECF No. 13-1.    There is no language in the Virus Exclusion that would support a distinction between whether a virus was a direct or indirect cause of loss or damage.    By the plain meaning of the language used in the Policy, if COVID-19 was even an indirect cause of L&L's losses, L&L's claim cannot succeed.

Next, L&L appears to believe that the Virus and Organic Pathogen Exclusions could not apply to Civil Authority coverage because the Civil Authority coverage is for "business income loss or extra expense, not the property damage caused by the virus."    RESP. MEM. at 18, ECF No. 50.    That belief is not at all consistent with the language of the Policy.    The Civil

14

Authority coverage would pay for "the actual loss of Business income you sustain and necessary Extra Expense caused by action of civil authority" under certain conditions.   EX. 1 ("Policy") at 78, ECF No. 13-1.   Both the Organic Pathogen Exclusion and the Virus Exclusion clearly apply prohibit an insurered from recovering "loss or damage," caused by a virus, including through the Civil Authority coverage provision.   EX. 1 ("Policy") at 77-78, 88, 99, ECF No. 13-1

     Finally, L&L states that "Defendants have not cited any case law holding that the tenuous connection between an excluded cause of loss prompting a civil authority order, the institution of a civil authority order, and business income loss or extra expense resulting from civil authority order can preclude coverage[,]" and then L&L attempts to distinguish the case law that Defendants did provide.   See RESP. MEM. at 18-19, ECF No. 50.   In point of fact, Evanston cited several decisions that addressed the interaction of nearly identical exclusion provisions, COVID-19 shut-down orders, and plaintiffs claiming business income losses.   See, e.g., BA LAX, LLC v. Hartford Fire Ins. Co., 2021 U.S. Dist. LEXIS 10919 (C.D. Cal. Jan. 12, 2021). But, if L&L intended to say that Evanston did not cite a decision that used the exact same Virus and/or Organic Pathogen exclusions, the exact same COVID-19 orders, and the exact same Civil Authority coverage provision, that appears to be true,

15

though as discussed in the next paragraph, that victory is rather hollow under the circumstances.

While L&L is correct that the outcome of an insurance coverage dispute is dependent on the facts and the policy in each case, that argument is not a particularly persuasive reason to ignore many of the California cases cited by Evanston. First, the language used in the Policy in this case is nearly verbatim to language drafted by the ISO.  Many insurers — including many of the insurers involved in the other California COVID-19 insurance disputes — either use the ISO language as a model or downright copy the ISO language for their own policies. Second, the COVID-19 shut-down orders at issue affected so many California businesses at roughly the same time and in roughly the same way, that the facts of the cases that Evanston cites are extremely similar to those of this case.  Thus, when looking to other California cases addressing COVID-19 insurance disputes about ISO-based insurance policies, we are, in fact, comparing apples to apples.

### b. Expectations of the Parties

L&L argues that, because it "had no part in the drafting of any Policy language," its "reasonable interpretation of the Policy should be favored." RESP. MEM. at 20, ECF No. 50.  That is not an entirely accurate statement of California law.  The rule is that if a policy is ambiguous, then the policy should be

16

interpreted against the insurer.  <u>Healy Tibbitts Constr. Co. v.</u>
<u>Employers' Surplus Lines Ins. Co.</u>, 72 Cal. App. 3d 741, 749
(Cal. Ct. App. 1977).  And, because insurance policies are
contracts of adhesion, any exclusions will be strictly construed
against the insurer.  <u>Healy</u>, 72 Cal. App. 3d at 749.  Here, as
noted earlier, the policy is not ambiguous with respect to the
Virus and Organic Pathogen Exclusions, and even interpreting
them narrowly, they still prohibit L&L's claims.

   Next, L&L looks to the intentions of the ISO when drafting
the Virus Exclusion, claiming that the ISO created the exclusion
to deal with contamination of an insured property.  RESP. MEM.
at 21, ECF No. 50.  There are many problems with this argument.
First, it ignores the fact that there are <u>two</u> exclusions: the
Virus Exclusion and the Organic Pathogen Exclusion. Even if
there were some problem related to the Virus Exclusion, the
Organic Pathogen Exclusion still stands to block L&L's claims.
Second, under California law, a court should determine the
intent of the parties by first considering the text of the
language; if there is no ambiguity in the policy language, the
Court will not look any further into the intent of the parties.
<u>Hartford</u>, 326 P.3d at 259.  Third, even if the Court were to
look at the parties' intentions, it is the parties' intentions,
not the ISO's intentions, that would matter.

17

Finally, L&L essentially tries to argue that because the Policy said "virus" and not "pandemic" it would not be reasonable to think that the Policy excluded damage or loss caused by a pandemic of COVID-19. RESP. MEM. at 21, ECF No. 50 ("It would be unreasonable to conflate a discrete contamination by a pathogenic organism or virus that could have occurred either negligently or fortuitously with a pandemic in which the business owner had no ability to prevent it with reasonable diligence."). Not so. A pandemic is a disease, here a virus, "that occurs over a wide geographic area (such as multiple countries or continents) and typically affects a significant proportion of the population."[5] It is, in other words, a virus that has affected a lot of people in a lot of places. There is nothing in the Virus or Organic Pathogen Exclusions to suggest that either exclusion become inoperative when a virus outbreak crosses some undisclosed brightline and becomes a "pandemic."

### c. Ambiguity of the Virus Exclusion

L&L argues that the Policy is ambiguous based on statements that the ISO allegedly made to insurance regulators. However, California does not allow a court to consider extrinsic evidence where there is no ambiguity. ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co., 22 Cal. Rptr. 2d 206,

---

[5]     *Pandemic*,     MERRIAM-WEBSTER.COM,     https://www.merriam-webster.com/dictionary/pandemic (last visited Apr. 8, 2021).

214 n.39 (Cal. Ct. App. 1993) ("Some jurisdictions--but not California--allow extrinsic evidence even where contract terms are unambiguous . . . ."). Here, the language is not ambiguous, and thus, the expectations of the parties yield to the plain meaning of the text.

### d. Ripeness

In its response memorandum, L&L attempts to argue that Evanston's motion is not ripe because there are complex, material factual issues that must be fleshed out with discovery. See RESP. MEM. at 24-25, ECF No. 50.   L&L believes that these issues include "whether there exists physical loss or damage, the mechanism by which the coronavirus and COVID-19 cause property damage and illness, the infectiousness and health risks of COVID-19, and the expense that is necessary for remediation[.]"   RESP. MEM. at 25, ECF No. 50.   However, the factual issues to which L&L points need not be decided for the Court to conclude that, based on L&L's own First Amended Complaint, L&L's losses were either directly or indirectly caused by the coronavirus.   In either case, the Virus and Organic Pathogen Exclusions would bar L&L's claim.

### III. CONCLUSION

The Court finds that the plain language of the insurance policy is unambiguous, and by the unambiguous plain language of the policy, Plaintiff's claim based on the harm caused by COVID-

19

19, a virus, is barred by the Virus and Organic Pathogen Exclusions — regardless of how the phrase "direct physical loss or damage" is interpreted.   The DEFENDANTS' RENEWED MOTION TO DISMISS AMENDED COMPLAINT ("Renewed Motion to Dismiss") (ECF No. 48) will, therefore, be GRANTED.

It is so ORDERED.

_____/s/  REP_____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: April 13, 2021

# APPENDIX

## Business Income (and Extra Expense) Coverage Form

A. Coverage

    1. Business Income

        ***

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

        ***

    2. Extra Expense

a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

    (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation

expenses and costs to equip and operate the
replacement location or temporary location.

(2) Minimize the "suspension" of business if you
cannot continue "operations".

We will also pay Extra Expense to repair or replace
property, but only to the extent it reduces the
amount of loss that otherwise would have been payable
under this Coverage Form.

\*\*\*

5. Additional Coverages

a. Civil Authority

In this Additional Coverage, Civil Authority, the
described premises are premises to which this
Coverage Form applies, as shown in the Declarations.
When a Covered Cause of Loss causes damage to
property other than property at the described
premises, we will pay for the actual loss of
Business Income you sustain and necessary Extra
Expense caused by action of civil authority that
prohibits access to the described premises, provided
that both of the following apply:

(1) Access to the area immediately surrounding
the damaged property is prohibited by civil
authority as a result of the damage, and the
described premises are within that area but are
not more than one mile from the damaged
property; and

(2) The action of civil authority is taken in
response to dangerous physical conditions
resulting from the damage or continuation of the
Covered Cause of Loss that caused the damage, or
the action is taken to enable a civil authority
to have unimpeded access to the damaged
property.

Civil Authority Coverage for Business Income will
begin 72 hours after the time of the first action of
civil authority that prohibits access to the
described premises and will apply for a period of up

2

to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

> (1) Four consecutive weeks after the date of that action; or

> (2) When your Civil Authority Coverage for Business Income ends;

> whichever is later.

***

Ex 1 ("Policy") at 77-78 ("CP 00 30 10 12"), ECF No. 13-1.

*Covered "Premises" Described in the Above Two Sections*

| DESCRIPTION OF PREMISES | | | | | | |
|---|---|---|---|---|---|---|
| Prem. No. | Bldg. No. | Location Address | No. of Stories | Year Built | Occupancy | Construction |
| 1 | 1 | 4936 Zambrano St, Commerce, CA 90040 | 1 | 1984 | Warehouse | Joisted Masonry |
| Class Code: 1211    Class Description: Freight Terminals | | | | | | |

Ex 1 ("Policy") at 59, ECF No. 13-1.

*"Covered Causes of Loss" Described in the Above Two Sections*

A. Covered Causes Of Loss

> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

Ex 1 ("Policy") at 89, ECF No. 13-1.

3

**Pathogen Exclusion**

EXCLUSION – POLLUTION, ORGANIC PATHOGENS AND ASBESTOS

This endorsement modifies insurance provided under the following:
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS RISK COVERAGE FORM
CAUSES OF LOSS - BASIC FORM
CAUSES OF LOSS - BROAD FORM
CAUSES OF LOSS - SPECIAL FORM

I. The BUILDING AND PERSONAL PROPERTY COVERAGE FORM is amended as follows:

***

B. The Definitions section is amended as follows:

***

2. The following definition is added:

"Organic pathogen" means:

a. Any organic irritant or contaminant including, but not limited to, "fungus", wet or dry rot, bacteria, virus or other microorganism of any type, and their by-products such as spores or mycotoxin; or

b. Any disease-causing agent as classified by the Environmental Protection Agency.

II. The CAUSES OF LOSS - BASIC FORM, CAUSES OF LOSS - BROAD FORM and CAUSES OF LOSS - SPECIAL FORM are amended as follows:

A. The Exclusions section is amended as follows:

1. The following replaces the "Fungus", Wet Rot, Dry Rot And Bacteria exclusion:

4

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Organic Pathogens

Presence, growth, proliferation, spread or any activity of "organic pathogens".

This exclusion applies regardless of whether there is any:

> a. Direct physical loss or damage to Covered Property;
>
> b. Loss of use, occupancy or functionality or decreased valuation of Covered Property or loss of Business Income;
>
> c. Action required including, but not limited to, testing, repair, replacement, removal, clean-up, abatement, disposal, relocation, or actions taken to address medical or legal concerns; or
>
> d. Suit or administrative proceeding, or action involving the insured.

***

Ex 1 ("Policy") at 99-100, ECF No. 13.

## Virus Exclusion

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

> COMMERCIAL PROPERTY COVERAGE PART STANDARD PROPERTY POLICY

A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

C. With respect to any loss or damage subject to the exclusion in Paragraph B., such exclusion supersedes any exclusion relating to "pollutants".

D. The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

> 1. Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and
>
> 2. Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

E. The terms of the exclusion in Paragraph B., or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

EX. 1 ("Policy") at 88, ECF No. 13.

6